## Mary Delaney v. Daniel Delaney.

1. BENEFIT SOCIETIES—*Change of Beneficiary.*—During his life a member of a mutual benefit society may change his beneficiary in any way not prohibited by general law, or by the charter or by laws of the society, or by the terms of the certificate.

2. SAME—*When Vested Rights Accrue.*—In mutual benefit societies the contract of insurance is between the society and the member, and the beneficiary acquires no vested right in the benefit fund which is to accrue upon the death of the member, until such death takes place.

3. SAME—*Mode of Changing the Beneficiary.*—Where the mode of changing the beneficiary named in the certificate of a benefit society is specified in the contract or certificate such mode must be substantially pursued; but the rule has its qualifications.

4. SAME—*Change of Beneficiary—New Contract.*—When the parties, the society and the member, agree that a transaction between them is to be treated as a surrender of the existing certificate, and a new one with a new beneficiary is issued, a new contract is made and the old one abandoned and suspended, although the old certificate may be in the possession of the original beneficiary and out of the power of the member to surrender.

**Bill of Interpleader.**—Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the March term, 1897. Affirmed. Opinion filed May 6, 1897.

JAMES E. WHITE and B. F. MOSELEY, attorneys for appellant; WARD B. SAWYER, of counsel.

A life insurance policy is a chose in action and can be assigned by a delivery like any other chose in action; and a

delivery of the policy for the purpose of assignment will operate without any writing.   2 Parsons on Contracts (8th Ed.), 597; Palmer v. Merrill, 6 Cush. (Mass.), 286; 2 May on Ins. (3d Ed.), Sec. 389, 395; Cook v. Black, 1 Hare (Ch.), 390; 2 Schouler's Personal Property (2d Ed.), Sec. 72; Niblack on Ben. Soc. and Acc'd Ins. (2 Ed.), Sec. 167 and note.

FRANCIS T. COLBY, attorney for appellee.

The rights of appellee are not impaired by the amendatory statute approved June 22, 1893 (Laws of 1893, 117).   Kersten v. Voigt, 61 Ill. App. 42; 164 Ill. 314.

The charter providing that widows, orphans, heirs and devisees might be beneficiaries, appellee was qualified to be a beneficiary.   Martin v. Stubbings, 126 Ill. 388; Bloomington Mut. Ben. Ass'n v. Blue, 120 Ill. 121; Laws of 1871–2, 296; Laws of 1873–4, 74; Rockhold v. Canton, Mass. Mut. Ben. Soc. 129 Ill. 440.

Appellant had no vested interest under first certificate; it being issued by a mutual benefit society the contract was with the member and not with the beneficiary.   Martin v. Stubbings, 126 Ill. 388; Sup. Council v. Franke, 34 Ill. App. 651, 137 Ill. 118; Conyne et al. v. Jones, 51 Ill. App. 17; Benton v. Brotherhood, 146 Ill. 570.

Where the contract of mutual benefit insurance does not take away the power to change the beneficiary, the member has the right.   Benton v. Brotherhood, 146 Ill. 570; Johnson v. Van Epps, 110 Ill. 551; Niblack Ben. Soc. (1894 Ed.), 407, Sec. 212; Highland v. Highland, 109 Ill. 366.

The delivery of the certificate to the beneficiary named therein has no effect whatever upon the right of the member to change the designation, as provided in the contract of insurance, and this though the possessor of the certificate has paid the assessments.   Masonic Ass'n v. Bunch, 109 Mo. 560; Fisk v. Eq. Aid Union (Pa.), 11 Atl. Rep. 84; Brown v. Grand Lodge, 80 Iowa, 287; Hirschl v. Clark, 81 Iowa, 200; Isgrigg v. Schooley, 125 Ind. 94.

Among successive equities otherwise equal, and also be-
tween a legal title or superior equitable interest earlier in
time and a subsequent equity, the holder of the interest
which is prior in time and would be prior in right may lose
his precedence and be postponed by his negligence. No
actual fraudulent intent is essential. When one keeps silent
and does not announce his title to an innocent person who
is making expenditures or advancing money upon the sup-
posed security of the property, his *laches* constitute an
equitable estoppel. 2 Pomeroy's Eq. Juris. (2d Ed.), Sec.
731, and cases cited in note 1; Reiss v. Hanchett, 141 Ill.
419; Eldridge v. Walker, 80 Ill. 270.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION
OF THE COURT.

This was a bill filed by the High Court Independent
Order of Foresters to require the appellant and appellee to
interplead and settle between themselves their respective
claims to $1,000, admitted by the order to be due and owing
from it upon an endowment certificate payable upon the
death of Martin Delaney, a member of said order, who died
October 25, 1893. The appellant was the wife of the mem-
ber, Martin Delaney, and the appellee was his remote
relative.

The original endowment certificate was issued November
14, 1882, and was made payable "to Mary Delaney, his
wife." Such certificate was delivered by the order to Mar-
tin Delaney, the member, and by him delivered to the
appellant, his wife, about the time it was issued, and it
remained continuously in her possession from that time
until the bill was filed.

January 6, 1887, Martin represented to the order that he
had lost such certificate, and requested that a new one be
issued to him, payable to the Mercy Hospital, which was
done, without a surrender in fact of the original certificate.
Subsequently, on July 24, 1888, Martin surrendered to the
order the certificate which was payable to the Mercy Hos-
pital, and requested that a new certificate be issued payable

Delaney v. Delaney.

" to Daniel Delaney (the appellee), his cousin," which was done.

The contest is between the appellant, as holder of and as the person named in the original certificate, and the appellee, as holder of and as the person named in the last certificate.

There was evidence that the original certificate was taken out and delivered by Martin to his wife in consideration of her past support of him, and of moneys that she had furnished or loaned to him—some $400 being so furnished or loaned before their marriage—and that she paid his initiation fee of about $7 when he took out the certificate for her benefit, and that she agreed with him to pay all dues and assessments that should be asked of her.   There is no evidence that any subsequent dues or assessments were ever asked from her, although she testified that she " kept up the dues and assessments as I (she) agreed with my (her) husband, and paid all that I (she) had any notice of."

From the time the last certificate payable to appellee was issued, he, the appellee, paid all dues and assessments until Martin's death, and in so doing, and in the matter of Martin's board at the hospital and his funeral expenses, appellee paid out from $250 to $300 for Martin.

When Martin procured the issuance of the certificate payable to Mercy Hospital, he furnished to the order his affidavit that the original certificate had been " either lost, destroyed or stolen."   Such affidavit was not true, and was probably known by Martin to be false, for there is evidence that Martin asked his wife for the certificate, and that she refused to give it up.

The appellant testified that Martin told her that appellee had asked him to make over the certificate to him, and that he at first told her he was not going to do it, but subsequently told her he had done so.   Her only reply to such information was by way of asking Martin why he did so, to which he answered that he was drunk and did not know what he was doing.   She does not appear to have ever claimed any further right under the certificate until after Martin's death.

There was no evidence that the order ever made inquiry of the appellant for the original certificate, or gave or attempted to give her any notice that Martin had applied for a new certificate to take its place, or that such new one would be or had been issued payable to a different person than herself. The order seems to have acted wholly upon the sworn statement of Martin that the original certificate was lost or destroyed when it issued the new one payable to the hospital, and upon the actual surrender of that one when it issued the last one payable to the appellee. The original certificate, after reciting that it was issued to Martin upon certain stated conditions, contained the following:

"These conditions being complied with, the said High Court of the I. O. F. of Illinois, hereby promises and binds itself to pay to Mary Delaney, his wife, one thousand dollars upon satisfactory evidence of the death of said member and upon the surrender of this certificate, provided that said member is in good standing in this order at the time of his death, and provided also that this certificate shall not have been surrendered by said member and another certificate issued at his request in accordance with the laws of the order."

And each of the subsequent certificates was exactly the same, except in the name and description of the beneficiary.

We have stated sufficient of the facts, although not all of them, to show what the question of law is that arises in the case, viz.: Was the original certificate annulled and the appellant deprived of her right to the fund by what was subsequently done without her knowledge or consent?

In mutual benefit societies the contract of insurance is between the society and the member, and the beneficiary acquires no vested right in the benefit fund which is to accrue upon the death of the member, until the death takes place. Niblack on Benefit Societies (2d Ed.), Sec. 212.

And it would seem, therefore, to follow that during his life the member may change his beneficiary in any manner not prohibited by general law, or the charter or by-laws of

Delaney v. Delaney.

the society, or by the certificate itself.   Voigt v. Kersten, 164 Ill. 314.   Where, however, a mode of changing the beneficiary be specified in the contract or certificate it should be substantially pursued.   Ibid. Sec. 218.

But even in such a case the rule has its qualifications. Ibid. Sec. 219.

In this case there does not appear to have been any express provision for changing the beneficiary; at least we have been pointed to none.   Undoubtedly the order would be required to issue a new certificate payable to a new beneficiary whenever it should accept a surrender of the former certificate, but not otherwise.   What shall constitute such a surrender and acceptance of surrender must, in the absence of express provision, be left to the parties to the certificate— the order and the member—to agree upon.   The beneficiary, having no vested interest in the certificate until after death of the member, is, in our opinion, without legal right to interfere. And when the parties to the contract—the order and the member—agree that a transaction between them is to be treated as a surrender of the old certificate, and a new certificate is issued with a new beneficiary, a new contract comes into force and the old one becomes abandoned and superseded.

It does not seem that the mere manual surrender of a certificate should be required if the parties elected to dispense with it.   The provision of the contract that the fund would be paid to the beneficiary named upon a surrender of the certificate (by the beneficiary) provided that the certificate should not have been sooner surrendered by the member, would seem to contemplate the case of a member who had delivered his certificate to the beneficiary and could not control its manual possession, but who nevertheless had effected a legal surrender of it and obtained another certificate in favor of a different beneficiary.   At any rate, we can not conceive any principle existing in the theory of mutual benefit insurances that will give to the holder and beneficiary of a former certificate the power of preventing the member and society from making a new contract naming a different beneficiary.   To admit such, would be to acknowl-

edge the existence of a vested interest by a beneficiary in the contract during the lifetime of the member and from the moment of the making of the contract, which we understand no authority sustains.

Nor can the appellant sustain her right to the fund upon any principle applicable to gifts or general contracts. But we will not discuss the case further, except to add that it possesses features of considerable callateral importance which it would be desirable to have settled by the Supreme Court.

The decree of the Circuit Court is affirmed.